STATE of Missouri, Respondent,

v.

Joseph WARREN, Jr., Appellant.

No. 49517.

Supreme Court of Missouri,

Division No. 1.

March 11, 1963.

Rehearing Denied April 8, 1963.

Dewey S. Godfrey, Jr., St. Louis, for appellant.

Thomas F. Eagleton, Atty. Gen., James E. Darst, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

HYDE, Judge.

Defendant was convicted of forcible rape (Sec. 559.260) and sentenced under the habitual criminal act (Sec. 556.280) to 45 years' imprisonment. (Statutory references are to RSMo and V.A.M.S.) Defendant contends the court erred in failing to direct a verdict of acquittal, claiming "the testimony of the prosecutrix was uncorroborated, contradictory and vague and therefore insufficient to sustain the verdict of guilty."

The State's evidence showed the following. Prosecutrix, who was a nurse's assistant at Barnes Hospital, locked herself out of her upstairs apartment (in a four-family flat) on Monday, September 11, 1961, and went to find the girl who lived in an adjoining apartment, to let her in to that apartment. From that apartment she could get to hers by a porch, the door to which she had left open. She did not find the girl at her sister's home where she thought she would be but met defendant who said he knew the girl she was looking for and he offered to get a ladder to get to the porch and let her in. Prosecutrix accepted this offer and took care of defendant's little daughter who was with him while he did so, then visited with him and the child in her apartment for a while. He told her his first name but she did not learn his last name. Two days later, Wednesday, defendant came to her door about noon offering to sell purses and clothes but prosecutrix said she did not want to

buy any and did not let him in. The next day, Thursday, defendant came back about noon and said he still had some purses but prosecutrix refused to buy and told him to go on. (Prosecutrix worked at the hospital at night and usually got up about noon.) The next day, Friday, about noon, defendant knocked on her door and when she opened it stuck his foot in the door. Prosecutrix tried to run upstairs but defendant caught her and put his hand over her mouth when she called the name of the man who cared for the house and lived in the ground floor apartment. Prosecutrix was "tussled" through the living room of the apartment and into the bedroom where her duster was torn from her body, and she was thrown onto the bed. She tried to knock over furniture to attract the attention of the ground floor occupant. Defendant got on top of the prosecutrix, held one hand at her throat, and attempted to get her pajamas off of her body with the other. He told her to "shut up" or he would choke her to death. Prosecutrix broke free from the defendant and attempted escape through the kitchen, but was again caught by defendant in the kitchen. Defendant then struck prosecutrix in the neck, knocking her to the ground, seized a butcher knife from the sink, and put it to her neck. He stated that if she did not submit, he would kill her, and that if she did not cease crying, he would force her to commit an act of sodomy on him. To divert him, prosecutrix said that she was a diabetic and might have a seizure and die without her insulin; but defendant unzipped his pants and had a complete act of intercourse with her. After offering her money, which she refused, the defendant left the apartment, taking the knife with him.

Prosecutrix, crying, went to the apartment of downstairs occupant, told him what had taken place and called the police. The downstairs neighbor testified that he was shaving, when he heard someone call his name (he thought in a normal tone of voice) and answered but had no response.

He also heard a noise like glass breaking. The police officer who answered the call said prosecutrix was in "a hysterical state * * * crying and screaming" and that he had a hard time getting out of her what had happened. He said "the apartment was disarranged * * * furniture was shoved to the side and the bed * * * in a disheveled condition * * * bed clothing all scattered around, a pillow was on the floor." Prosecutrix was sent to a city hospital for examination. The hospital admission card signed by a doctor stated: "Soreness in neck—young female, crying— sl. tenderness left side of neck; no abrasions or lac, pelvic superficial laceration about ½ cm just to the left of vaginal opening, marital intriotus, vaginal vault of about 5 plus CC's of whitish muco serous."

As stated in defendant's brief: "The testimony on behalf of the defendant was for the most part, directed at showing that subsequent to their first meeting, the defendant and the prosecutrix struck up a friendship which had as its primary step, an attempt of the defendant's part to sell the prosecutrix a purse, and as its culmination, a *liaison* in the prosecutrix's apartment on the mid-morning of September 15th. Interspersed between these occasions were other intimacies in the basement of an after-hours liquor establishment and meetings between the two outside her doorstep and at Barnes Hospital. The defendant contended that he did, in fact, have intercourse with the prosecutrix in her apartment at the mid-day on the 15th of September; that it was an act consented to by prosecutrix; and further that it was followed by a sodomous act by the prosecutrix upon the defendant. The defendant testified that his failure to reciprocate in kind on the prosecutrix as by previous agreement, caused her to become chagrined, and as a result this difficulty arose."

Defendant cites State v. Akers, Mo. Sup., 328 S.W.2d 31, 33, in which we said: "The uncorroborated evidence of the prosecutrix will sustain a conviction of incest.

or rape, but when the evidence of the prosecutrix is of a contradictory nature, or when applied to the admitted facts in the case her testimony is not convincing but leaves the mind of the court clouded with doubts, she must be corroborated, or the judgment cannot be sustained." Although in that incest case, the prosecutrix did not tell anyone about the sexual intercourse for two weeks, we affirmed the conviction because of corroborating circumstances; which was also the result reached in the cited rape case of State v. Weekly, Mo.Sup., 223 S.W.2d 494. In State v. Burton, Mo.Sup., 196 S.W.2d 621, and State v. Tevis, 234 Mo. 276, 284, 136 S.W. 339, 341, cited by defendant, the evidence was very different from this case. In the Burton case, the prosecutrix voluntarily remained with the boys after the claimed rape when they went to a dance and allowed them to take her home, although she had several opportunities to leave them before and after the dance, and said nothing about it when she came home. The case was reversed and remanded for a new trial because of this doubtful testimony. In the Tevis incest case, prosecutrix claimed incestuous conduct for five years, as to which she waited 13 months after the last act before telling her mother. It was likewise reversed and remanded for a new trial.

■ In this case, prosecutrix immediately called the police and was crying and in a condition described as "a hysterical state" by the first witnesses to see her, the downstairs occupant and the police officer. It is argued that, if the struggle prosecutrix described had taken place, the downstairs occupant would have heard more than he said he did and also that prosecutrix would have been injured to a greater degree than the hospital record showed. Our conclusion is that the testimony of the prosecutrix and the corroborating circumstances were sufficient to make a case for the jury so that the court properly overruled defendant's request for a directed verdict of acquittal.

■ Defendant's other claim of error is "in admitting into evidence testimony relative to another offense with which the defendant was not charged herein and in further commenting to the Jury relative to this testimony and thereby placing undue influence and emphasis on the testimony." The first concerned testimony as to defendant's attempted sodomous relations. Obviously this was part of the res gestae. State v. Taylor, 320 Mo. 417, 8 S.W.2d 29; State v. Fisher, Mo.Sup., 302 S.W.2d 902; State v. Moore, Mo.Sup., 353 S.W.2d 712, 714, and cases cited.) Furthermore, there was no objection to the testimony of prosecutrix concerning defendant's sodomous purpose, although his counsel was first informed by the State's attorney that this would be stated by prosecutrix, and was given an opportunity to object by the Judge; and there was no claim in the motion for trial of error in admitting it. Apparently, defendant wanted this in the case because of his claim that sodomous relations were suggested and accomplished by prosecutrix. The claim made in the motion for new trial and argued in the brief relates to comment of the Judge when defendant was asked by his counsel to state the circumstances of the sodomous relation, claimed by defendant to have been accomplished by prosecutrix. The State's attorney objected that this was repetitious. (Defendant had previously testified about it.) The Judge said he would sustain the objection unless any juror wanted to hear more. He stated: "I'm making no comment on what has preceded or what you have heard before, but if any member of the jury desires to hear anything additional to what you have heard already in answer to the question propounded, raise your hand?" One juror did so and he overruled the objection. There was no objection or request by defendant's counsel, who then continued the inquiry with several more questions. Thus nothing was preserved for appellate review but in any event no prejudicial error appears.

We have examined the record as required by our Rules 28.02 and 28.08, V.A.M.R. and find it sufficient as to those matters therein specified.

The judgment is affirmed.

All of the Judges of the Division concur and HUNTER, Special Judge, concurs.