**STATE of Missouri, Respondent,**

v.

**Herbert QUINN, Appellant.**

**No. 51900.**

Supreme Court of Missouri, Division No. 2.

July 11, 1966.

Motion for Rehearing or to Transfer to Court En Banc Denied Sept. 12, 1966.

because there was prejudicial and improper contact with the jury by the sheriff after the jury had retired for deliberation.

In support of his motion for new trial, appellant testified that after the jury retired to the jury room to deliberate, he observed the sheriff open the door of the jury room, look in, go to a desk in the courtroom, pick up a tablet, tear some sheets out of it, take a pencil and go into the jury room and *close the door*. Appellant testified the sheriff was in the jury room "a couple of minutes" and then came out of the jury room. In response to this testimony, the State made no showing whatsoever. Section 546.240 RSMo 1959, V.A.M.S., provides, among other things, that when the jury retires to deliberate upon its verdict, they are to be in charge of an officer, who is to keep them together and not permit any person to speak or communicate with them, *nor do so himself*, unless by order of the Court or to ask whether they have agreed upon their verdict. Appellant testified that the Judge was not present in the courtroom when the sheriff went into the jury room. In State v. Hayes, 323 Mo. 578, 19 S.W.2d 883, at 887, this Court held that the deputy sheriff violated what is now § 546.240 RSMo 1959, V.A.M.S., " * * * by his presence in the same room with the jurors during their deliberations * * *." In State v. Jones, 363 Mo. 998, 255 S.W.2d 801, at 806, this Court quoted with approval from Mattox v. United States, 146 U.S. 140, 150, 13 S.Ct. 50, 53, 36 L.Ed. 917, 921, as follows: " 'Private communications, possibly prejudicial, between jurors and third persons, or witnesses, or the officer in charge, are absolutely forbidden, and invalidate the verdict, at least unless their harmlessness is made to appear.' " Appellant's testimony made a prima facie showing of violation of § 546.240 RSMo 1959, V.A.M.S. The State had the burden, under the circumstances, of affirmatively showing that the jurors were not improperly influenced. This burden was not sustained. Cf. State v. Cox, Mo.Sup., 333 S.W.2d 46, 50. On

Norman H. Anderson, Atty. Gen., Jefferson City, Thomas J. O'Brien, Sp. Asst. Atty. Gen., Kansas City, for respondent.

James E. Reeves, Ward & Reeves, Caruthersville, for appellant.

DONNELLY, Judge.

Appellant, Herbert Quinn, was convicted of forcible rape under § 559.260 RSMo 1959, V.A.M.S., by a jury in the Circuit Court of Pemiscot County, Missouri, and his punishment was assessed at imprisonment in the custody of the Department of Corrections for a term of ten years. Following rendition of judgment and imposition of sentence, an appeal was perfected to this Court.

Appellant contends the trial court erred in not granting his motion for new trial

this record, the case must be reversed and remanded for new trial.

Appellant raises other questions which must be considered on this appeal. He contends the trial court erred in overruling his motion for directed verdict because the evidence of prosecutrix was of a contradictory nature, was not convincing, and leaves the mind in doubt.

■ "The uncorroborated evidence of the prosecutrix will sustain a conviction of incest or rape, but when the evidence of the prosecutrix is of a contradictory nature, or when applied to the admitted facts in the case her testimony is not convincing but leaves the mind of the court clouded with doubts, she must be corroborated, or the judgment cannot be sustained." State v. Akers, Mo.Sup., 328 S.W.2d 31, 33.

Counsel for appellant fairly summarizes the testimony of prosecutrix and, because of the nature of appellant's assignment of error, we adopt his statement of evidence elicited from her. Prosecutrix testified that on the morning of September 26, 1964, a colored man broke in on her after her husband had left to go hunting and attacked her. He woke her up by touching her and after she had opened her eyes and saw it was a Negro man, he slammed his hands over her face and told her if she screamed he would kill her and her baby. He kept the knife on her throat at all times and kept hitting her in the face. She testified she saw glimpses of him when he would "close" his hand from her face as there was a light outside the window and the curtain was pulled back so that the light shined into the bedroom. He was of medium height, kind of tall, had short curly hair and a mustache; he was wearing a dark suit and a white shirt without a necktie and she smelled alcohol on his breath and felt his mustache when he kissed her. She stated that he had intercourse with her.

She testified that there were no lights on in the bedroom but there was a light in the living room and by the bedroom door that showed into the bedroom. There was a light outside the house that showed through the window and the blind was up a little and the curtain was pulled back. The first time she saw him was when he touched her and she turned over, thinking it was her husband. She saw him to recognize him during the attack and after the attack. After the attack was over, she watched him leave and got a good look at him as he went out the bedroom door, but she did not see him as he went out the front door. As he went out the bedroom door, there was a light and she got a good look at him then and also when he was attacking her. He was dressed in a dark suit.

The attack occurred around 4:00 a. m. and the shock of seeing a strange colored man in her bedroom excited her and she got rather hysterical and upset. The only identifying mark she noticed was the mustache, and did not notice any scars. She noted the mustache when he kissed her and she felt it, and he had alcohol on his breath. He was not real tall and not real short. When she gave the description of him to the police officer, she told him that the man who attacked her wasn't real dark, had on a dark suit, white shirt and no necktie, and had curly hair and was well dressed. She did not call the police herself, but she called her sister-in-law and her mother. She got a glimpse of him during the attack, but she saw him completely when he went out the door of the bedroom.

There was no medical evidence to corroborate the attack, and there was no clothing found by the officers which matched prosecutrix's description of the clothes her assailant had been wearing. There were no fingerprints or other evidence found at the scene. The description of the assailant furnished by the prosecutrix would fit a number of colored persons in the locality. The description given the police did not cause them to pick up appellant until nearly two days had elapsed.

On September 27, 1964, appellant was picked up by the police and was identified by the prosecutrix at the city hall as her assailant. She again identified him in a lineup at the county jail on September 28, 1964, and at the trial.

Witness J. T. Simms testified that he and the husband of prosecutrix, with others, went squirrel hunting the morning of September 26, 1964. He arrived at the home of prosecutrix and her husband at 3:45 a. m. and waited, parked in his pickup in front of the house, for about ten minutes. During that time a colored man came by on the sidewalk. At the trial, Simms identified appellant as the man he observed at that time.

■ Appellant cites State v. Burton, 355 Mo. 467, 196 S.W.2d 621, and State v. Tevis, 234 Mo. 276, 136 S.W. 339. "In the Burton case, the prosecutrix voluntarily remained with the boys after she claimed rape when they went to a dance and allowed them to take her home, although she had several opportunities to leave them before and after the dance, and said nothing about it when she came home. The case was reversed and remanded for a new trial because of this doubtful testimony. In the Tevis incest case, prosecutrix claimed incestuous conduct for five years, as to which she waited 13 months after the last act before telling her mother. It was likewise reversed and remanded for a new trial." State v. Warren, Mo.Sup., 366 S. W.2d 311, 313. The evidence in the Burton and Tevis cases was quite different from this case. Prosecutrix reported the incident five or ten minutes after the attack. It is our opinion that application of the rule set forth from State v. Akers, supra, does not assist appellant. The evidence was sufficient to make a case for the jury and appellant's motion for directed verdict of acquittal was properly overruled. State v. White, Mo.Sup., 195 S. W. 994; State v. Ross, Mo.Sup., 196 S. W.2d 799; State v. Thurston, Mo.Sup., 242 S.W. 908; State v. Moore, Mo.Sup., 143 S.W.2d 288.

■ Appellant contends that he was not given a speedy trial guaranteed him by Section 18(a) of Article I of the Constitution of Missouri, V.A.M.S. and the due process clause of the Fourteenth Amendment to the United States Constitution. He was arrested September 27, 1964, and his preliminary examination was set for October 14, 1964. On October 13, 1964, the preliminary examination was continued for ten days to October 23, 1964. On October 20, 1964, it was continued for ten days to October 30, 1964. On October 30, 1964, it was continued five days to November 4, 1964. The preliminary examination was held on November 4, 1964, and appellant was bound over to the Circuit Court. There is no showing that Rule 23.06, V.A. M.R., was violated. Terms of court in the Circuit Court of Pemiscot County began November 2, 1964, March 1, 1965, and July 5, 1965. Section 478.293 RSMo 1959, V. A.M.S. On February 2, 1965, the information was filed and John R. Fowlkes was appointed counsel for appellant. On March 1, 1965, at the request of appellant, Fowlkes was relieved and James E. Reeves was appointed counsel for appellant. On May 4, 1965, appellant waived formal arraignment, entered his plea of not guilty, and the case was set for trial July 21, 1965. On July 21, 1965, the case was continued on application of appellant to September 23, 1965. Trial was had on September 23, 1965. On this record, appellant was not entitled to be discharged. State v. Amerison, Mo.Sup., 399 S.W.2d 53; State v. Nelson, Mo.Sup., 279 S.W. 401.

■ Appellant complains of the failure to afford him counsel at the preliminary hearing. The question of affording an accused counsel at the preliminary hearing was treated at some length in State v. McClain, Mo., 404 S.W.2d 186, filed June 13, 1966, where this Court reaffirmed "that the mere lack of counsel at a preliminary hearing held under the Missouri practice

is not a deprivation of due process or of any other constitutionally protected right." Appellant's contention is without merit.

Appellant further complains of the failure, upon request, to furnish him a copy of the transcript of the evidence taken at the preliminary hearing. A transcript of the preliminary hearing, *in all cases of homicide,* is provided for by statute and by rule. Sections 544.370 and 554.390 RSMo 1959, V.A.M.S.; Rules 23.-12 and 23.11, V.A.M.R. These statutes and rules are not applicable in this case of alleged forcible rape. It was not error to fail to reduce the evidence at the preliminary hearing to writing and to fail to furnish appellant a copy of the transcript of the evidence adduced therein. 22 C. J.S. Criminal Law § 341.

The judgment is reversed and the cause remanded for new trial.

All concur.