STATE of Missouri, Plaintiff-Respondent,

v.

Samuel Lee NEAL, Defendant-Appellant.

No. 36124.

Missouri Court of Appeals,
St. Louis District,
Division One.

Aug. 5, 1975.

Frederick R. Buckles, Asst. Public Defender, James C. Jones, Charles D. Kitchin, St. Louis, for defendant-appellant.

Julian Cosentino, Asst. Circuit Atty., St. Louis, John C. Danforth, Atty. Gen., Clarence Thomas, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

RENDLEN, Judge.

This appeal is from defendant's conviction of second degree murder under § 559.-020 RSMo 1969 and sentence of fifty-five years imprisonment. We affirm.

Defendant makes two assignments of error: (1) the court erred in permitting a police officer to testify that state's witness Austin Jenkins had not been booked for the same murder with which defendant had been charged, because such testimony was

irrelevant and prejudicial; and (2) the court erred in refusing a mistrial when the prosecutor suggested, in closing argument, that the police suspected defendant was guilty of the crime, thereby violating defendant's presumption of innocence.

The case arises from the murder of Perron Scaife on July 31, 1973. The facts of the killing were primarily supplied by Jenkins who testified that on the day in question defendant and he went with one other man to Scaife's home to purchase "drugs." The transaction for purchase of the drugs occurred while the parties were in Jenkins' car near Scaife's home, at which time, defendant, apparently dissatisfied with the quantity of drugs supplied by Scaife, threatened him with a pistol. The group then went to Scaife's apartment, where on defendant's demand for more drugs, Scaife told him there were no more, "that that was all he had." Jenkins then searched the bathroom but found no additional drugs, whereupon defendant proceeded to the bathroom, followed by the deceased. Jenkins, who remained in the other room, heard scuffling in the bathroom and then a single gun shot. Going immediately to the bathroom, Jenkins saw Scaife standing in a corner with defendant pointing a pistol at him and heard Scaife say, "Don't kill me." Defendant fired the gun and Jenkins fled through the back door of Scaife's home into the car followed closely by defendant and they immediately drove from the scene. There is no contention the evidence was insufficient to support the verdict.

Defendant, for his first assignment of error, complains of the admission of evidence relating to criminal charges against Jenkins and his agreement to testify on behalf of the state in exchange for promised leniency. On direct examination the prosecutor, apparently anticipating an attack upon the witness' credibility, elicited

testimony that a robbery charge was pending against witness Jenkins, and in exchange for the promised leniency on that charge, Jenkins had agreed to testify against defendant. Defense counsel, on cross-examination, brought out that the robbery count pending against Jenkins was not connected with the incident at Scaife's home.[1] Jenkins had been charged with the robbery on July 31, 1973, and was approached sometime later by the prosecutor to testify in the present case.

The prosecutor on redirect, without objection, asked Jenkins if he had been charged with Scaife's murder. The exchange between Jenkins and the prosecutor was as follows:

"Q. All right. Were any murder charges, or any other type of charges brought against you as a result of Perron Scaife's shooting?

A. Yes sir.

Q. What was that?

A. Murder.

Q. Were you ever charged by the state?

A. Naw.

Q. You were never charged by the state?

A. When we were first arrested.

Q. When they initially arrested you?

A. Yes.

Q. Were any formal charges ever issued?

A. No."

Immediately, on recross-examination, defense counsel asked Jenkins whether his hands had been treated with "liquid" or "sprinkly stuff," apparently inquiring whether Jenkins had been tested by neutron actuation analysis to determine if he had recently fired a gun. Jenkins denied that he had undergone such testing.

---

1. There is some confusion in the testimony whether Jenkins was the subject of one or two robbery charges but it is clear that at least one such charge was pending against him when the "leniency" bargain was made.

Near the close of the state's case Officer Raymond Pestka of the St. Louis Police Department, who arrested Jenkins and defendant, was recalled and asked by the prosecutor whether Jenkins had been "booked for murder." Over defense's objection, Officer Pestka testified that Jenkins had not been so booked for murder.[2] In support of his contention that testimony as to Jenkins not having been booked for murder was irrelevant, defendant cites several cases, none of which are controlling here. The cited authorities state the general rule that a witness' credibility may not be attacked by showing mere arrest not resulting in conviction; but these cases also recognize exceptions to the rule "in cases where the interrogation is necessary to show the bias or motive of a prosecution witness; for example, that an indictment or charge has been dropped in return for desired testimony." *State v. Taylor*, 498 S.W.2d 614, 616[1] (Mo.App.1973). It is precisely this exception which justified introduction of Officer Pestka's testimony. Certainly defendant on cross-examination would have been entitled to establish the fact that Jenkins had not been booked for this murder and that he was under the onus of at least one robbery charge and had been offered leniency on that charge for becoming a state's witness in this case. All this defendant could develop to explain the interest or bias of the witness. So too, may the state in anticipation and by way of explanation, on direct examination, demonstrate such interest of the witness to the jury.

It is undisputed that witness Jenkins was present at the murder of Perron Scaife and arrested while in the company of defendant. Similarly, there is no question that Jenkins' testimony was in response to promises of leniency including an independent robbery charge. However, interrogation of Jenkins by both the prosecution and defense caused confusion as to whether he had been charged with Scaife's murder and, by inference at least, was being promised leniency with respect to that crime as well. In the exchange between the prosecutor and Jenkins, set out above, it is not clear whether Jenkins was charged with murder when arrested; he answered in both the affirmative and negative and we note the defense made no objection to this line of inquiry. Counsel for defendant heightened the confusion when, on cross-examination, asked the witness whether tests had been conducted to determine if he had fired a gun. This raised the implication that perhaps Jenkins had participated in or committed the murder, from which the jury might infer Jenkins should have been "booked for murder" but was not, as a part of the leniency arrangement.

Where several persons are involved in a single criminal transaction, "[p]romises of immunity from prosecution, reduction of charges, reduction of punishment, and dismissal of charges are common methods of obtaining testimony implicating persons other than the witness." and "[w]hether such promises have been made is an important fact which a jury must have to evaluate the testimony." *State v. Brooks*, 513 S.W.2d 168, 173–174[9–10] (Mo. App.1973). It is always relevant to show the interest or bias of a witness, *State v. Nebbitts*, 498 S.W.2d 762, 764[2] (Mo.1973), even though such evidence has no bearing on the issues of the case. *Thornton v. Vonallmon*, 456 S.W.2d 795, 798[2] (Mo.App. 1970). How far the inquiry into the bias or interest goes is left largely to the discretion of the trial court. *State v. Pigques*, 310 S.W.2d 942, 947[8] (Mo.1958). Absent a clear abuse of discretion, we will not interfere with the trial court's ruling. *Aiple v. South Side Nat'l Bank in St. Louis*, 442 S.W.2d 145, 152[7] (Mo.App.1969).

2. The defense objected that such evidence was not relevant and the objection was sustained. The state, however, explained the question was in anticipation of the defense's closing argument relating to the manner in which Jenkins was approached to be a witness. The court then overruled the objection.

■ Defendant cites *State v. Bradley*, 361 Mo. 267, 234 S.W.2d 556, 559[8] (1950), for the proposition that absence of charges against a witness for the same crime is of too doubtful probative force to be admissible to show that the state offered leniency to the witness. In *Bradley* the evidence was offered by the defense to attack the credibility of the state's witness in an attempt to establish an offer of leniency had been made. Here the witness admitted the arrangement with the state for leniency on the robbery charge. Confusion appeared only as to Jenkins' involvement in the murder charge. The trial court did not abuse its discretion by permitting relevant testimony clarifying the murder charge against Jenkins in light of already admitted bargains with the prosecutor's office. Further it is the general duty of a prosecutor to rectify errors in testimony when the correct information is at his disposal. See *State v. Brooks, supra* at 174[11]; *State v. Koonce*, 504 S.W.2d 227, 230[2] (Mo.App.1973); *State v. McClain*, 498 S.W.2d 798, 799–500 (Mo.banc 1973). Defendant's first assignment of error is without merit.

■ As his second point defendant contends the trial court erred in refusing to declare a mistrial when, in closing argument, the state urged the jury to consider that the police suspected defendant of the offense in question. Such statement, he contends, violates his presumption of innocence. The contested portion of the argument is as follows:

"MR. COSENTINO: Place yourselves in a situation where if you are carrying a gun in an automobile where would it be if it wasn't on your person. If you were with two other fellows where would those—if they had guns, where would their guns be in an automobile if 'they weren't on their persons. Everybody's gun is accounted for, and the gun that fired the fatal shot is under where Sam Neal was seated. There is the circumstance, but that is not the only circumstance. That is not the only circumstance. Sam Neal was given a test for gunshot residue because the police had strong suspicions that he killed—

MR. BUCKLES: I am going to object to that statement.

THE COURT: The jury is instructed to disregard the word 'strong suspicion.'

MR. BUCKLES: I am going to ask for a mistrial.

THE COURT: Mistrial denied.

MR. COSENTINO: No other reason that they would do that other than that. Why do you think the police would give somebody one of these tests?

MR. BUCKLES: I am going to object.

MR. COSENTINO: This is an inference that can be drawn from the testimony of the officers that were involved.

THE COURT: Be governed by your recollections of the testimony, ladies and gentlemen of the jury."

There is no question that the accused in a criminal proceeding is presumed innocent until proven guilty. *State v. Lee*, 488 S.W.2d 272, 273[4] (Mo.App.1972). Defendant's guilt is a matter to be proved, beyond a reasonable doubt, and the opinion of an individual as to defendant's guilt cannot be argued to the jury without violating the presumption of innocence. *State v. Hess*, 240 Mo. 147, 144 S.W. 489, 492[4] (1912). See also *Holden v. Berberich*, 351 Mo. 995, 174 S.W.2d 791, 792[3] (1943). Prosecutor Cosentino's speculation as to the police officer's opinion of defendant's guilt[3] seems to have little purpose except to express his own views on that subject. This case does not nicely fit the exception that a prosecutor may express his opinion as to a defendant's guilt when such opinion is clearly drawn from the evidence. *State v. Jackson*, 499 S.W.2d 467, 471[3] (Mo.1973); 23A C.J.S. Criminal Law § 1104, p. 195. We

---

3. The officer administering the gunshot residue test did not testify that he suspected or believed defendant killed Perron Scaife.

consider the prosecutor's closing argument an artless attempt to express his own views based on an inference though the record thinly supports the inference, if at all. However, these remarks must be weighed against the admonition of the Supreme Court in *Donnelly v. DeChristoforo*, 416 U.S. 637, 646, 647, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974):

> ". . . Such arguments, like all closing arguments of counsel, are seldom carefully constructed in toto before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear. While these general observations in no way justify prosecutorial misconduct they do suggest a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations."

Whether the remarks of counsel in closing argument necessitate the declaration of a mistrial rests largely with the discretion of the trial court and appellate courts will not interfere unless the record shows an abuse of such discretion to appellant's prejudice. *State v. Wintjen*, 500 S.W.2d 39, 42[1] (Mo.App.1973). Every instance where a prosecutor exceeds the limits of legitimate argument is not a cause for mistrial. Declaration of a mistrial is a drastic remedy that should be exercised only in extraordinary circumstances where the prejudice can be removed in no other way, and the trial court can best gauge the prejudice. *State v. Raspberry*, 452 S.W.2d 169, 173[7–8] (Mo.1970); *State v. Phelps*, 478 S.W.2d 304, 308[7–9] (Mo.1972). Generally, if the prejudicial effect can be removed through other corrective action and the trial court undertakes such action, mistrial need not be granted. *State v. Camper*, 391 S.W.2d 926, 928[5] (Mo.1965); *State v. Raspberry, supra* at 173. To constitute a reversible error or require a mistrial the prejudicial effect of prosecutor Cosentino's statement must have been such that it

could not have been removed by striking and instructing the jury to disregard it, *State v. Camper*, 391 S.W.2d 926, 928[2] (Mo.1965). Whether anything more was required was a matter for the court's discretion and from the record we cannot say as a matter of law that discretion was abused. *State v. Tate*, 468 S.W.2d 646, 650[7] (Mo. 1971). For statements made in oral argument to be reversible error, they must have been "plainly unwarranted and clearly injurious." *State v. Hutchinson*, 458 S.W.2d 553, 556[5] (Mo.banc 1970). In light of the substantial evidence against defendant and on consideration of the entire record, we find no reversible error occurred.

Defendant raises two other objections in his brief to the effect the negative evidence of other suspects not being booked is incompetent and hearsay. Defendant concedes these points were not preserved, but urges that we consider them under Rule 27.20(c). We have reviewed his contentions and find that they do not constitute plain error.

Judgment affirmed.

WEIER, P. J., and DOWD, J., concur.