**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Keith HAYES, Defendant-Appellant.**

**No. 43212.**

Missouri Court of Appeals,
Eastern District,
Division Two.

April 6, 1982.

Rehearing Denied May 14, 1982.

Application to Transfer Denied
Sept. 13, 1982.

John Ashcroft, Atty. Gen., Kristie Green, Jay D. Haden, Asst. Attys. Gen., Jefferson City, George R. Westfall, Pros. Atty., Clayton, for plaintiff-respondent.

Allen I. Harris, St. Louis, for defendant-appellant.

SIMON, Judge.

Appellant, Keith Hayes, 16 years of age, was arrested and tried as an adult before a jury on three counts in the Circuit Court of St. Louis County; kidnapping, armed criminal action, and robbery in the first degree. The jury found Hayes guilty on the three counts; he was sentenced to 5 years for kidnapping, and 5 years for armed criminal action to run concurrently, plus 10 years for robbery to run consecutively with the concurrent 5 year sentences for a total of 15 years. Hayes appeals contending that the trial court erred in: (1) failing to suppress certain of his pretrial statements made to the police; (2) failing to strike the armed criminal action charge on double jeopardy grounds; and, (3) failing to declare a mistrial after the court learned that an alternate juror had retired to the jury room at the end of the trial with the other twelve jurors.

Our review will begin with the factual background. On February 22, 1979, at 7:30 P.M., Gayle Hodge drove to the River Roads Shopping Center. Upon arriving at the parking lot, she parked her pick-up truck and began to get out. A man came up, put a gun to her side and told her to move over and unlock the passenger door. She did as she was told and a second man got into the truck from the other side and took approximately $180 out of Hodge's purse. The first man was unable to drive Hodge's truck because it had a manual transmission so the two men decided to make Hodge drive. The first man kept the gun in Hodge's side during the entire time she was driving the truck. The two men got out at the inter-

section of Genevieve and Thekla in the City of St. Louis. They left her a dollar to buy gasoline and walked away. She drove to a gas station and then to a friend's house where she called the police.

On February 29, 1979, Detective Harry Holifield, working undercover for the St. Louis Police Department, telephoned Hayes and spoke to him about purchasing a pistol. Holifield had become acquainted with Hayes during the course of an unrelated investigation of Hayes' brother. During their conversation Holifield told Hayes that a lot of money could be made by holding up drug stores. Hayes' reply indicated that he had a gun and had used it in the River Roads robbery. Their conversation was tape recorded by Holifield and was played to the jury during the trial.

That evening Holifield and his partner, Detective Green, working undercover met with Hayes and his brother. Hayes showed Holifield a .38 revolver. Hayes said he and another person had used the revolver to rob a "good-looking white girl" of $180 at the River Roads Shopping Center and to force her to drive them near his house. Based on this information the Jennings Police arrested Hayes. After being advised of his rights Hayes made a statement denying any involvement in the crimes in question. He was taken to Juvenile Court where counsel was appointed to represent him. At a certification hearing, the Juvenile Court waived jurisdiction and remanded the case to the circuit court.

On April 18, 1980 at about 6:30, Detectives Dick and Hahn of the Jennings Police Department, who had been investigating the River Roads robbery, went to Juvenile Court to pick up Hayes. Dick gave Hayes the Miranda warnings and drove Hayes to the Jennings Police Department. According to Detective Dick, on the way to the police station, Hayes stated that the lawyer who was appointed to represent him by the Juvenile Court was no longer his attorney. Dick made no attempt to contact the attorney.

After Hayes was booked and processed, he was brought to the detectives' office.

Before the detectives began their interrogation they again advised Hayes of his Miranda rights. Subsequently, Hayes signed a waiver form indicating that he wished to waive his rights. During the interrogation Hayes was not handcuffed, and both Dick and Hahn were out of uniform. Hayes never requested an attorney. Dick told Hayes that if he cooperated he would make his cooperation known at the time of trial, but he never promised Hayes that he would not be prosecuted if he cooperated. This questioning lasted approximately one hour and Hayes repeatedly denied any involvement in the hold-up of Hodge. At approximately 9:45 Hayes was returned to his cell.

At 11:30 that same evening Hayes was again brought to the detective room for further questioning by Dick and Hahn. Dick asked Hayes if he remembered the Miranda rights and Hayes responded that he did. During this second questioning, Hayes said that sometime in February he and "Basil" were shooting pool at the River Roads Shopping Center and that they discussed a robbery and Basil showed the defendant a pistol. Hayes said he told Basil that he would accompany him on a robbery but would not hold the gun. Hayes stated that he and Basil robbed a woman and forced her to drive to the intersection of Genevieve and Thekla where they took off on foot. Hayes stated that they took $180 from the victim and gave a description of a woman that resembled Hodge. After relating his statement orally, Hayes reduced it to writing at Dick's request. At the top of the written statement which the defendant signed were printed Miranda warnings. Detective Dick testified that no type of coercion was used in obtaining this confession.

Hayes moved to suppress his pretrial statements as involuntary, but following a hearing, his motion was denied. Hayes claims the statements were elicited after verbal threats and physical violence, and that his written statement was what Detective Dick had told him to write. Hayes denies any involvement in the armed robbery of Hodge and says his earlier state-

ments to Holifield were mere boasts. During the trial, Hayes' motion to exclude his statements was overruled.

Approximately an hour after the jury began its deliberation the bailiff discovered that the court had inadvertently forgot to discharge the alternate juror, Arthur Bogue. The court denied Hayes' motion for a mistrial. After Bogue was discharged the jury returned a verdict of guilty on all three counts. The jury foreman was then voir dired as to the incident with the alternate juror. He said Bogue made only one comment in regard to the voluntariness of Hayes' confession. The foreman could not remember the content of the statement.

A hearing was held pursuant to Hayes' motion for a new trial. The prosecutor offered into evidence twelve affidavits all of them identical except for the name of the signor:

> "I _____ hereby affirm that I served as a lawfully impaneled juror in the trial of a case of the State of Missouri vs. Keith Hayes, cause # 422844, in Division Three, which commenced on November 14, 1979 and concluded on November 15, 1979.
>
> I further affirm that Mr. Arthur Bogue, the alternate juror, did not participate in the deliberation on the case, and his presence in no way influenced, either directly or indirectly, the decision I reached, individually, or which the jury reached, collectively."

The prosecutor also introduced into evidence the affidavit of Arthur Bogue disclaiming any participation in the jury deliberation, and stated that his presence in no way directly or indirectly affected the jury's decision.

Hayes objected to the admission of the jurors' affidavits on the grounds that they were inadmissible hearsay and that they could not be used to impeach the jury's verdict. The court overruled the objection and Hayes' post trial motion.

On appeal, Hayes contends that the trial court erred in overruling his motion to suppress and admitting into evidence the statements he made in the Jennings Police Station. Hayes claims that his statements, in which he admitted participating in the River Roads robbery-kidnapping, were the result of physical and psychological coercion and intimidation. When an incriminating statement is obtained from a suspect while in custody, the state has the burden of proving its voluntariness. While the burden of proceeding is on the defendant, once he made his allegations regarding the inadmissibility of the statements, the state had the burden to prove by a preponderance of the evidence that the statements were made voluntarily in compliance with *Miranda* guidelines. *State v. Olds*, 569 S.W.2d 745, 751 (Mo.banc 1978).

Hayes and Officer Dick testified about the circumstances under which Hayes made the incriminating statements. The testimony was conflicting. The trial court chose to believe Officer Dick's version of the interrogation. The trial court weighed the evidence and judged the credibility of the witnesses; it chose to believe Detective Dick. The trial court's finding on the issue of the admissibility of the statements is a matter of discretion which we will not disturb, absent a showing of an abuse of its discretion. *State v. Royal*, 610 S.W.2d 946, 949 (Mo.banc 1981); *State v. Rapheld*, 587 S.W.2d 881, 885–86 (Mo.App.1979).

The record indicates sufficient evidence to support the trial court's ruling that the state met its burden of proving by a preponderance of the evidence that Hayes' incriminating statements were voluntary and in accordance with *Miranda* guidelines. The record does not show an abuse of discretion. Hayes' first point cannot be sustained.

Hayes next contends that the multiple convictions for kidnapping and armed criminal action placed him in double jeopardy.[1] We agree.

---

1. We point out that the jury instructions are not a part of the record on appeal. At oral argument the State's attorney stated that the armed criminal action conviction was directed

Our armed criminal action statute[2] has been the subject of extensive litigation[3] on the issue of double jeopardy. In *State v. Davis*, 624 S.W.2d 72 (Mo.App.1981), the defendant, flourishing a revolver, confronted the victim as the victim approached her parked car. Defendant commanded the victim to get into the car. Defendant also got into the car, held a gun to the victim's head and ordered her to drive. Our brethren in the western district commented an individual "may not be convicted of both kidnapping and armed criminal action because the former is a lesser offense included in armed criminal action."[4] *Davis, supra* at 75.

The facts in the present case are similar to those in *Davis*. Throughout her entire ordeal Gayle Hodge had a gun either pointed at her or stuck in her side. In proving all the elements of armed criminal action, the state necessarily proved every element required to establish the crime of kidnapping.[5] Thus, under our Supreme Court's mandates in the *Sours* and *Haggard* cases, noted *supra*, the armed criminal action conviction cannot stand.

■ The final issue concerns the trial court's failure to discharge the alternate juror before the jury retired to the jury room to deliberate. Hayes' contentions are essentially twofold; first, he claims the trial court erred in overruling his motion for a mistrial; and second, he claims the trial court erred in admitting the affidavits of the jurors at the post-trial hearing on Hayes' motion for new trial. We hold the presence of the alternate juror in the jury room at the beginning of deliberations did not constitute reversible error in this case.

Our analysis of this issue begins with an analysis of the applicable statutes.[6] The statutory provisions have not significantly changed through the years. Our courts have focused on two factors: whether the challenged activities constituted "jury separation" or "misconduct," and, in cases of jury separation, whether it took place before or after the jury had retired to deliberate.

■ In the leading case of *State v. Shawley*, 334 Mo. 352, 67 S.W.2d 74 (1933), our Supreme Court discussed jury separation in detail. Under the common law, jury separation occurred when there was "a departure of one or more jurors from their fel-

---

to the kidnapping conviction and not the robbery conviction. This was also reflected in the grand jury's indictment. For the purposes of this appeal we assume this to be the case.

2. Section 571.015 RSMo. (1978).

3. *See, e.g., State ex rel. Westfall v. Ruddy*, 621 S.W.2d 42 (Mo.banc 1981); *State v. Fletcher*, 619 S.W.2d 57 (Mo.banc 1981); *State v. Haggard*, 619 S.W.2d 44 (Mo.banc 1981); and, *Sours v. State*, 593 S.W.2d 208 (Mo.banc 1980), on remand *Sours v. State*, 603 S.W.2d 592 (Mo.banc 1980).

4. In *Davis* the state dismissed the kidnapping charge prior to sentencing. *See, State v. Greer*, 609 S.W.2d 423 (Mo.App.1980), *affirmed* 619 S.W.2d 65 (Mo.banc 1981).

5. Hayes was charged with the Class B felony of kidnapping pursuant to § 565.110(4) RSMo. (1978). Under this section, the kidnapping occurs in furtherance of another felony, *i.e.*, robbery.

6. Section 546.240 RSMo. (1978) provides:
"When the argument is concluded, the jury may either decide in court or retire for deliberation. They may retire under the charge of an officer who, in case of a felony, shall be sworn to keep them together in some private or convenient room or place and not permit any person to speak or communicate with them, nor do so himself, unless by order of the court, or to ask them whether they have agreed upon their verdict; and when they have agreed, he shall return them into court, or when ordered by the court. The officer shall not communicate to any person the state of their deliberations; provided, however, when there are women members of a jury, they may be kept separate from the men members of the jury, if any, and under the charge of a woman officer of the court during any time when the court is not in session, or in which they are not deliberating upon their verdict."

Section 547.020 RSMo. (1978) provides, in pertinent part:
"The court may grant a new trial for the following causes, or any of them:

\* \* \* \* \* \*

(2) When the jury has been separated without leave of the court, after retiring to deliberate upon their verdict, or has been guilty of any misconduct tending to prevent a fair and due consideration of the case ..."

lows, or all of the jurors departing from each other." *Id.* 67 S.W.2d at 88. While this rule is virtually the same today, it has been relaxed somewhat: "the mere physical separation of the jury for sleeping purposes in case of necessity or for their better accommodation does not violate a statute forbidding a separation, provided they remain in the custody and under the surveillance (not necessarily ocular) of the officer in charge of them." *Id.* 67 S.W.2d at 89.

■■■ Our courts have consistently held that if a jury separation occurs without leave of court in a felony case while the jury is deliberating a new trial must be granted. *Id.* 67 S.W.2d at 88; *State v. Dodson*, 338 Mo. 846, 92 S.W.2d 614 (1936). It is immaterial whether actual prejudice is shown.[7] In *State v. Quinn*, 405 S.W.2d 895, 896 (Mo.1966), our Supreme Court reversed a rape conviction based on the testimony of the defendant at the motion for new trial. Defendant's testimony was to the affect that after the jury had retired to the jury room to deliberate:

> "he observed the sheriff open the door of the jury room, look in, go to a desk in the courtroom, pick up a tablet, tear some sheets out of it, take a pencil and go into the jury room and *close the door.*"

*State v. Quinn, supra* at 896. Defendant stated that the sheriff remained in the jury room for several minutes. Rather than adopting a "per se" rule for reversal, our Supreme Court held that in this case, "[t]he State had the burden, under the circumstances, of affirmatively showing that the jurors were not improperly influenced."[8] *Id.* at 896. The holding in *Quinn* requires that in cases involving "misconduct" under § 547.020(2) RSMo. (1978), the State is afforded the opportunity to present evidence of lack of prejudice even if the misconduct occurred during deliberations. As Justice Donnelly stated in *Quinn*: "[p]rivate communications, possibly prejudicial, between jurors and third persons . . . are absolutely

forbidden, and invalidate the verdict *unless their harmlessness is made to appear.*" *State v. Quinn, supra* at 896, *quoting Mattox v. United States*, 146 U.S. 140, 150, 13 S.Ct. 50, 53, 36 L.Ed. 917 (1892) (emphasis ours).

The present case is governed by our Supreme Court's pronouncements in *Quinn.* Many of the cases cited by Hayes concern jury separation. In the case at bar there was misconduct, but not jury separation. All of the jurors remained together under the surveillance of the officer in charge of them. *See Shawley, supra.* Therefore we shall apply the standard set forth in *Quinn.* In applying this standard, we conclude the trial court correctly determined that Hayes was not prejudiced by the alternate juror's presence during the jury's deliberation.

The state presented two types of evidence following the return of the verdict and at the hearing on Hayes' motion for new trial. The first was the voir dire testimony of the jury foreman. The foreman was unsure of the content of the single comment made by the alternate juror. The trial court also considered the affidavits of all twelve of the jurors as well as that of the alternate juror. In effect, each affidavit stated that the alternate juror did not participate in or influence the jury deliberations. Hayes argues that the admission of these affidavits into evidence was error because jurors are not permitted to impeach their verdicts and that the affidavits were inadmissible hearsay. We disagree.

■■■ The use of juror affidavits to support their verdict and negate a claim of prejudice arising from jury separation or misconduct has long been recognized in Missouri. In the present case, juror affidavits were used to support their verdict, rather than to impeach it. Our Supreme Court has held that "the affidavit of jurors may be received in support of and to uphold the verdict, though not to contradict or destroy

---

7. In cases in which the jury separation occurs during the trial our courts have upheld the verdicts if the state can show the harmlessness of the separation. *State v. Edmondson*, 461 S.W.2d 713 (Mo.1971).

8. In *Quinn* the State did not introduce any evidence to refute defendant's testimony. Thus, the State did not meet its burden.

it." *State v. Westmoreland*, 126 S.W.2d 202, 204 (Mo.1939), *quoting, Jordan v. St. Joseph Ry., Light, Heat, & Power Co.*, 335 Mo. 319, 73 S.W.2d 205, 210 (1934). Furthermore, affidavits by jurors in support of their verdict does not constitute inadmissible hearsay. *State v. Finnell*, 280 S.W.2d 110, 115 (Mo.1955).

The trial court has considerable discretion in deciding to grant a mistrial. *State v. Nolan*, 423 S.W.2d 815 (Mo.1968). Our review of the record does not indicate an abuse of that discretion.

For the foregoing reasons, the judgment of the trial court is reversed with respect to the armed criminal action conviction and affirmed with respect to all other issues.

DOWD, P. J., and GUNN, J., concur.