**STATE of Missouri, Respondent,**

v.

**David L. SCRIVNER, Appellant.**

**No. WD 34947.**

Missouri Court of Appeals,
Western District.

July 3, 1984.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 28, 1984.

Application to Transfer Denied
Oct. 9, 1984.

James W. Fletcher, Public Defender, Sean D. O'Brien, Asst. Public Defender, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Douglas Lind, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, C.J., and DIXON and CLARK, JJ.

TURNAGE, Chief Judge.

David L. Scrivner was indicted on a charge of second degree murder, § 565.-004, RSMo 1978,[1] and found guilty by a jury of manslaughter. The jury assessed punishment at 10 years and the court thereafter imposed such punishment.

Scrivner contends the court erred in failing to grant a mistrial because: (1) a police officer testified that he found a gun on Scrivner's nightstand when Scrivner was arrested; (2) an alternate juror went to the jury room with the jury for about five minutes; and (3) the prosecutor's final argument was prejudicial. Affirmed.

Scrivner does not challenge the sufficiency of the evidence. On the night of February 27, 1982, Waldo Emerson, his wife Vivian, their daughter Kitty and her husband Paul, went to the home of Vivian's niece, Pat Mansur. When the Emerson family arrived Pat was at home with her husband Richard, and their daughter Jodi. Later Vivian's sister Terry, and Terry's boyfriend David Scrivner arrived.

An argument broke out after most of those present had consumed a considerable quantity of beer and vodka. Waldo was not actively engaged in the argument. He went out on the front porch and was followed in short order by his daughter Kitty.

Scrivner also left the house but went to his car and obtained a 25 caliber pistol. As Scrivner walked up the steps to the porch where Waldo was standing, the gun fired and Waldo was struck by a single bullet from which he died almost instantly.

The only dispute in the evidence concerned the firing of the gun. The state's evidence from Pat Mansur was that Scrivner told her that Waldo had called the mother of Vivian and Terry a bad name and had also said bad things about Terry. Scrivner told Pat that he shot Waldo for saying those things and that he was glad Waldo was dead.

Scrivner testified that he obtained the gun and was walking back toward the house when he tripped and the gun fired accidentally.

Scrivner first contends the court should have granted his motion for a mistrial when the police officer who arrested Scrivner at his home in Kansas testified that he entered Scrivner's home with a warrant and found Scrivner in bed, with a gun lying on his nightstand by the side of the bed. Immediately after the officer's statement, Scrivner's counsel approached the bench and objected to the testimony out of the hearing of the jury. He also moved for a mistrial. The court advised counsel out of the hearing of the jury that he was denying the motion for a mistrial. The court then instructed the jury to disregard the last question and answer of the witness.

Scrivner contends the court was required to grant a mistrial under *State v. Jones*, 583 S.W.2d 212 (Mo.App.1979), which held that it may not be shown that an accused had a weapon on his person at the time of arrest unless the accused makes some attempt to avoid arrest or unless it is shown that the weapon is connected to the crime for which the accused is being arrested. 583 S.W.2d at 216[2, 3]. While this court adheres to the rule in *Jones*, the facts in this case do not bring it within that rule. Here the court promptly instructed the jury to disregard the statement of the officer.

---

1. All sectional references are to Missouri's Revised Statutes, 1978.

The state made no further mention of the gun, nor did it attempt to introduce the gun in evidence. The only other mention of the gun was made by Scrivner's counsel when he brought out that the gun was an unloaded BB pistol. While the trial court in *Jones* overruled counsel's objection to the testimony that a gun was found in Jones' waistband and admitted the gun in evidence, in this case the court sustained the objection.

The prompt action of the trial court in this case to instruct the jury to disregard the officer's statement invokes the rule stated in *State v. Dennison*, 428 S.W.2d 573, 577[2–4] (Mo.1968):

> Where improper evidence comes into a case but is promptly stricken by the court and the jury is instructed to disregard it, the reviewing court, in order to hold that the failure to grant a mistrial was reversible error, must determine and conclude as a matter of law from the entire record that the error was prejudicial and so impressive that its effect was not removed by the action of the trial court.

After a review of the record this court is unable to say that the prejudicial effect of the officer's statement could not be removed by the prompt action of the trial court.

Scrivner next contends he was entitled to a mistrial when the court allowed an alternate juror to accompany the jury to its room to begin deliberations instead of excusing the alternate as required by § 494.-065. After the jury had been sent to its room to deliberate, the court made a record that it had forgotten to discharge alternate juror Bagley. The court stated that it had instructed the bailiff to request Bagley to leave the jury room and that Bagley had been with the jury four minutes. After the jury returned its verdict, Bagley executed an affidavit in which he stated that he did not participate in the deliberations of this case. The foreman of the jury, Ronald Lewis, also executed an affidavit in which he stated that Bagley did not participate in the deliberations of the case and that his presence did not influence in any way directly or indirectly the decision of Lewis or the jury as a whole.

Scrivner relies on a number of out-of-state cases for the proposition that the failure to discharge an alternate juror and the participation by such juror in the deliberations requires a mistrial. However, the courts of this state have not adopted that rule. In *State v. Hayes*, 637 S.W.2d 33, 38[7, 8] (Mo.App.1982), the court considered a case in which an alternate juror was not discharged and such juror remained with the jury while it deliberated for about one hour. Affidavits from all jurors were presented which stated that the alternate did not participate in the deliberations of the case and his presence did not influence directly or indirectly the decision of any individual juror or the jury as a whole. The court refused to apply a per se rule of prejudice to the situation but rather applied the rule stated in *State v. Quinn*, 405 S.W.2d 895, 896[1, 2] (Mo.1966), that the state could show the harmlessness of the presence of the alternate. The court held that the affidavits sustained the state's burden to prove the harmlessness of the alternate's presence in the jury room.

In *State v. Morris*, 662 S.W.2d 884 (Mo. App.1983), the court was also confronted with the problem of failure to discharge an alternate juror. In *Morris*, the alternate stayed with the jury during the first seven minutes of its deliberations. The alternate was brought into court and stated that no deliberations had actually begun in his presence because he had been in the bathroom. The court, relying on *Hayes*, supra, found that no prejudice to the defendant had occurred.

This court is bound to follow *Quinn* as the courts did in *Hayes* and *Morris*. The affidavits in this case show that the alternate juror did not engage in any jury deliberation and that his presence in the jury room did not influence directly or indirectly the deliberations of the jury.[2]

2. Although it may seem anomalous, the rule

followed in this state allows affidavits and testi-

The court was correct in refusing a mistrial on this ground.

Scrivner finally contends that the court should have declared a mistrial when the prosecutor argued that Terry knew Scrivner was guilty because she went to the porch following the shooting and told Scrivner to give her the gun and to run. The court sustained the objection but declined the motion for a mistrial and instructed the jury to disregard the argument.

This contention is practically identical to the situation presented in *State v. Neal*, 526 S.W.2d 898 (Mo.App.1975). There the prosecutor argued that the police suspected the defendant. The court noted that arguing that a witness holds the belief that a person is guilty violates the presumption of innocence enjoyed by a defendant in a criminal proceeding. However, the court noted that the declaration of a mistrial rests largely in the discretion of the trial court. To permit an appellate court to find an abuse of discretion in refusing to declare a mistrial, the appellate court must find that the prejudicial effect of the argument could not be removed by striking and instructing the jury to disregard. 526 S.W.2d at 903[10–15]. The *Neal* court further observed that whether further action was required by the court after it instructed the jury to disregard the argument was a matter for the court's discretion. A review of the record in this case convinces this court that there was no abuse of discretion in refusing to grant a mistrial after the court had instructed the jury to disregard the argument to which objection had been made.

The judgment is affirmed.

All concur.

mony of jurors or third persons to be utilized to support a verdict, but not to impeach it. *State*

*v. Finnell,* 280 S.W.2d 110, 114[8–11] (Mo.1955).