STATE of Missouri, Respondent,

v.

Ronald Ryan WHITE, Appellant.

No. WD 60682.

Missouri Court of Appeals,
Western District.

July 13, 2004.

Vanessa Caleb, Kansas City, MO, for Appellant.

Deborah Daniels, Jefferson City, MO, for Respondent.

Before EDWIN H. SMITH, P.J., HOLLIGER and HARDWICK, JJ.

LISA WHITE HARDWICK, Judge.

Ronald White was convicted by jury of second-degree assault and sentenced to a seven-year prison term. On appeal, he challenges the sufficiency of the evidence to support his conviction and contends his due process rights were violated by the presence of a law clerk during the jury's deliberations. We reverse and remand because the State failed to satisfy its burden of proving that no prejudice resulted from the law clerk's intrusion in the deliberative process.

FACTUAL AND PROCEDURAL HISTORY

Twenty-one year old Ronald White was charged with second-degree assault, § 565.060(3),[1] and armed criminal action, § 571.015, in connection with shotgun injuries to fourteen-year old Jessica Eagle. At the jury trial, witnesses testified that White was at home in his bedroom with four female friends, including Eagle, on August 22, 2000. White began "playing soldier" with a shotgun he found under his mattress. The gun discharged as he waved it around, and the shot struck Eagle in the arm.

The jury found White guilty of second-degree assault and acquitted him on the armed criminal action charge. Following the verdict, White learned that the trial judge's law clerk/bailiff, Rose Avellino, was present in the jury room during deliberations. He filed a Motion for New Trial, asserting the deliberative process was tainted and that his due process rights had

---

1. All statutory citations are to the Revised Missouri Statutes 2000, unless otherwise indi-    cated.

been violated by the jury intrusion. After a hearing, at which the law clerk testified, the trial court denied the new trial motion.

White was sentenced, as a prior offender, to a seven-year prison term. He appeals the judgment of conviction.

### SUFFICIENCY OF THE EVIDENCE

To convict White of second-degree assault, the jury had to find that he "recklessly cause[d] physical injury to another person by means of discharge of a firearm[.]" § 565.060.1(5). A person acts recklessly when "he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." § 562.016.4. Criminal liability cannot be imposed unless the person's conduct "includes a voluntary act." § 562.011.1. The law defines a voluntary act as "a bodily movement performed while conscious as a result of effort or determination." § 562.011.2(1).

█ White contends the evidence was insufficient to convict him of second-degree assault because the State failed to prove that he committed a voluntary act in pulling the shotgun trigger. All of the eyewitnesses, including the victim, testified at trial that the shooting was accidental. White testified that the gun discharged as he was laying it down, but he did not know whether the trigger was pulled or something hit the gun as he laid it down. He argues on appeal that "the State's evidence [of an accidental shooting] does not show any conscious bodily movement" to support the finding of a voluntary act.

Our review of this issue is limited to a determination of whether there is sufficient evidence from which a reasonable juror could find White guilty beyond a reasonable doubt. *State v. Winsor*, 110 S.W.3d 882, 885 (Mo.App. W.D.2003). We accept as true all of the evidence and inferences favorable to the State, while disregarding all evidence and inferences to the contrary. *Id.* Our function is not to reweigh the evidence, but rather to determine whether the conviction is supported by sufficient evidence. *Id.*

White's argument that he did not intentionally pull the shotgun trigger does not resolve the question of whether he committed a voluntary act. The State's case was based on evidence that White picked up a shotgun and handled it in a reckless manner. The victim testified that White waved the gun around as if he was "playing soldier." The shooting occurred as a result of his careless disregard for the substantial risks involved in wildly brandishing a weapon. White's conduct was voluntary, in that his bodily movement in playing with the gun arose from his conscious effort or determination. The State was not required to prove he intentionally pulled the trigger; its burden was satisfied by showing that White's reckless handling of the weapon was volitional.

We addressed a similar issue in *State v. Winsor*, 110 S.W.3d 882, a case in which marijuana was recovered from the defendant upon arrival at the county jail following his arrest on outstanding warrants. After he was convicted of possessing a controlled substance in a county jail, the defendant argued the evidence was insufficient to prove a voluntary act because he was brought to jail against his will by the arresting officer. *Id.* at 885. We held that the defendant's willful possession of a controlled substance constituted the requisite voluntary act sufficient to support the conviction. *Id.* at 886.

As in the present case, our decision in *Winsor* focused on the voluntariness of the defendant's conduct with regard to an ele-

ment of the charged offense. This is consistent with the statutory requirement that criminal liability must be based on conduct that "includes *a* voluntary act." § 562.011 (emphasis added). The State need not prove the voluntariness of each and every act of the defendant in committing the charged crime.

An essential element of second-degree assault under Section 565.060(5) is the defendant's reckless conduct in causing the discharge of a firearm. The evidence was sufficient to prove beyond a reasonable doubt that White's willful and reckless handling of the shotgun caused it to fire, resulting in serious injury to the victim. Accordingly, the State met its burden of proving a voluntary act to support the charge of second-degree assault. Point I is denied.

### Jury Intrusion

White contends the trial court erred in denying his new trial motion after evidence at a hearing established that the judge's law clerk was present during jury deliberations. He argues his due process rights [2] were violated by this intrusion into the deliberative process, "in that the presence of the law clerk ... could not help but have a chilling effect on the jurors' free exchange of opinion on the issues before them."

 The primary, if not exclusive, purpose of jury privacy and secrecy is to protect the jury's deliberations from improper influence. *U.S. v. Olano*, 507 U.S. 725, 737–38, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). To preserve the sanctity of deliberations, our courts have held that "[p]rivate communications, possibly prejudicial, between jurors and third persons, or witnesses, or the officer in charge, are absolutely forbidden, and invalidate the verdict, at least unless their harmlessness is made to appear." *State v. Hayes*, 637 S.W.2d 33, 38 (Mo.App. E.D.1982) quoting *Mattox v. U.S.*, 146 U.S. 140, 150, 13 S.Ct. 50, 36 L.Ed. 917 (1892). Upon *prima facie* evidence of such communications or contact, the State has a burden of affirmatively showing that jurors were not improperly influenced. *State v. Quinn*, 405 S.W.2d 895, 896 (Mo.1966).

 A new trial is warranted under Section 547.020(2) when jury misconduct tends to prevent a fair and due consideration of the case. Prejudice is presumed from misconduct involving improper third party contact with jurors. *State v. Babb*, 680 S.W.2d 150, 152 (Mo. banc 1984). When the improper contact intrudes upon the deliberative process, the State can avoid a new trial only by presenting evidence of a "lack of prejudice" to the defendant. *State v. Hayes*, 637 S.W.2d 33, 38 (Mo.App. E.D.1982).

 The trial court has broad discretion in determining whether the State has demonstrated the harmlessness of an improper jury contact. *State v. Klaus*, 730 S.W.2d 571, 580 (Mo.App. E.D.1987). The ruling will not be disturbed on appeal absent a showing that the trial court abused its discretion. *State v. Carr*, 610 S.W.2d 296, 300 (Mo.App. E.D.1980). "A trial court will be found to have abused its discretion when a ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *State v. Rutter*, 93 S.W.3d 714, 729 (Mo. 2002).

---

**2.** White alleges non-specific violations of his due process rights "as guaranteed by the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution, and Article I, Sections 10 and 18(a) of the Missouri Constitution." [Appellant's Brief, p. 12]

At the hearing on White's new trial motion, the State's sole witness was Rose Avellino, a judicial law clerk who also served as the courtroom bailiff during White's trial. Prior to the deliberations, Avellino recalled "socializing" with the jury panel by wishing one of the jurors "a happy birthday." Avellino testified she was in the jury room during the "vast majority" of deliberations because she thought it was her duty to "insure no one would interrupt the jury" and to be available to take any jury requests to the judge immediately. She knew the jurors were aware that she was the trial judge's law clerk and that she was listening to their deliberations. She recalled that, at one point, a juror looked at her for guidance and may have actually asked for help. Avellino shook her head and told the juror, "No, I'm sorry." She did not participate or recall making any other comments during the jury's deliberation.

The State argues Avellino's testimony was sufficient to prove the harmlessness of her contact with the jurors. The State contends the jury could not have been improperly influenced because Avellino "did not provide any helpful information." Moreover, the State suggests the jury's partial defense verdict refutes any likelihood that the law clerk's presence had a chilling effect on deliberations. White's acquittal on the armed criminal action charge would seem to indicate the jury was not unfairly prejudiced against him.

█ The State's sole reliance on Avellino's testimony fell short of proving a lack of prejudice. Jury intrusions can result in prejudice through verbal or non-verbal communications with jurors. Non-verbal communications can occur through "body language" or the intruder's mere presence may operate as a silent restraint on the jury's freedom of discussion and decision. *Olano*, 507 U.S. at 739, 113 S.Ct. 1770.

Avellino testified that she did not verbally participate in the deliberations. However, that evidence alone was insufficient to prove that her presence in the jury room had a benign effect on the deliberative process.

The State did not offer testimony from any of the jurors, as has been done in other cases involving jury intrusion during deliberations. In *State v. Scrivner*, 676 S.W.2d 12, 14 (Mo.App. W.D.1984), the trial court conducted a post-trial hearing to determine whether the presence of an alternate juror had affected jury deliberations. The State presented an affidavit from the jury foreman to establish that the alternate did not participate in or influence the jury deliberations. The trial court's finding of no prejudice was affirmed based on the statements of the jurors. Similarly, in *State v. Hayes*, 637 S.W.2d at 38, we held that affidavits from all of the jurors satisfied the State's burden of proving that the presence of an alternate during deliberations did not directly or indirectly influence the jury's decision.

█ The testimony of a non-juror may be sufficient to show a lack of prejudice when improper contacts occur outside the deliberative process. In *State v. Morris*, 662 S.W.2d 884 (Mo.App. S.D.1983), an alternate juror entered the jury room and remained for approximately nine minutes but left before deliberations began. The appeals court held the alternate juror's testimony was sufficient to meet the State's burden of proving the intrusion did not affect the jury's deliberations. *Id.* at 889. However, when the intrusion occurs during the deliberative process, additional evidence may be required to prove that the jury's verdict was not improperly influenced by verbal or non-verbal communications with a third party.

White was presumptively prejudiced by the Avellino's presence during jury deliberations. The State offered no evidence to show whether or how the jury was affected by having an officer of the court listen to the deliberations. Avellino's testimony that she did not participate in deliberations does not exclude the possibility that the jury was prejudiced by her "body language" or that her presence had a chilling effect by "operat[ing] as a restraint upon the ... jurors' freedom of expression and action." *Olano,* 507 U.S. at 739, 113 S.Ct. 1770. Nor does the jury's partial defense verdict offer any clear indication that deliberations were unaffected by the law clerk's presence. Because the second-degree assault and armed criminal action charges were based on the same evidence, the respectively inconsistent verdicts of guilty and innocent are more suggestive of a compromise decision than untainted deliberations. Testimony from the jurors was necessary, under the unique circumstances of this case, to affirmatively prove the verdicts were not improperly influenced by the presence of a court official.

White was entitled to a new trial because the State failed to overcome the presumption of prejudice arising from law clerk's intrusion in the deliberative process. The trial court abused its discretion in refusing to grant the new trial motion under Section 547.020(2) for jury misconduct. The judgment of conviction is reversed and the cause remanded for a new trial.

All concur.