STATE of Missouri, Respondent,

v.

Raymond L. HERNDON, Appellant.

No. WD 66610.

Missouri Court of Appeals,
Western District.

March 27, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 1, 2007.

Application for Transfer Denied
June 26, 2007.

Frederick Joseph Ernst, Kansas City, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Shaun Mackelprang and Karen Kramer, Office of Attorney General, Jefferson City, for Respondent.

PAUL M. SPINDEN, Judge.

Raymond L. Herndon appeals the circuit court's judgment convicting him of five counts of child molestation in the first degree, two counts of sexual misconduct in the first degree, four counts of statutory sodomy in the first degree, two counts of statutory sodomy in the second degree, and one count of statutory rape in the second degree. Herndon asserts that the prosecuting attorney did not present sufficient evidence for the jury to find him guilty beyond a reasonable doubt of one of the counts of statutory sodomy in the first degree. He also asserts that the circuit court erred by denying his motion for new trial and by entering its judgment of conviction because jurors engaged in misconduct and were subjected to outside influences during deliberations and because the circuit court erred in refusing to allow the victim's diary to be sent in its entirety to the jury during deliberations. We reverse and remand in part and affirm in part.

■   Although a jury convicted Herndon of 14 counts, Herndon complains about the sufficiency of the evidence pertaining to Count VI charging him with statutory sodomy in the first degree. Herndon asserts that the evidence was insufficient to support a finding of guilt because the evidence established that, although he placed his penis only on the victim's vagina, his penis did not penetrate the victim's vagina. He correctly contends that, in the absence of evidence that his penis penetrated the victim's vagina, his conduct does not fall within the statutory definition of deviate sexual intercourse.

Under Count VI, the state charged Herndon with statutory sodomy in the first degree, in violation of Section 566.062, RSMo 2000, for having "placed his penis on [the victim's] vagina." At trial, the circuit court instructed the jury:

As to Count 6, if you find and believe from the evidence beyond a reasonable doubt:

First, that between and including April 13, 2001 and April 13, 2003, in the County of Jackson, State of Missouri, the defendant placed his penis on [the victim's] vagina, and

Second, that such conduct constituted deviate sexual intercourse, and

Third, that at that time [the victim] was less than fourteen years old,

then you will find the defendant guilty under Count 6 of statutory sodomy in the first degree.

The General Assembly defined statutory sodomy in the first degree as "deviate sexual intercourse with another person

who is less than fourteen years old." Section 566.062.1. It defined deviate sexual intercourse as:

[A]ny act involving the genitals of one person and the hand, mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person[.]

Section 566.010(1), RSMo Supp.2002.

The state concedes that Herndon's putting his penis on the victim's vagina without penetrating the vagina did not satisfy the definition of deviate sexual intercourse. It asserts, however, that the evidence established that Herndon, in fact, penetrated the victim's vagina with his penis, and, therefore, such evidence meets the definition of deviate sexual intercourse in that it was a "sexual act involving the penetration, however slight, of ... female sex organ ... by [an] object done for the purpose of arousing or gratifying the sexual desire of any person[.]" Section 566.010(1).

We reject the state's position. In its instruction, the circuit court did not hypothesize that Herndon penetrated the victim's vagina. Indeed, the prosecuting attorney specifically told the jury during closing argument that it did not have to find that Herndon penetrated the victim's vagina to convict him. Thus, even if penetration of the female sex organ by a penis constitutes deviate sexual intercourse, no finding by the jury that penetration occurred supports the state's contention. The facts as alleged and submitted to the jury by the state, therefore, were insufficient to sustain a conviction for statutory sodomy.

■ Child molestation in the first degree, however, is a lesser-included offense of statutory sodomy in the first degree. *State v. Pond,* 131 S.W.3d 792, 793 (Mo. banc 2004). According to the Supreme Court, when we overturn a conviction of a greater offense for insufficient evidence, we may enter a conviction for the lesser offense " 'if the evidence was sufficient for the jury to find each of the elements and the jury was required to find those elements to enter the ill-fated conviction on the greater offense.' " *State v. Whalen,* 49 S.W.3d 181, 187–88 (Mo. banc), *cert. denied,* 534 U.S. 1030, 122 S.Ct. 567, 151 L.Ed.2d 440 (2001) (citation omitted).

"A person commits the crime of child molestation in the first degree if he or she subjects another person who is less than fourteen years of age to sexual contact." Section 566.067.1, RSMo 2000. Section 566.010(3) defines "sexual contact" as "any touching of another person with the genitals or any touching of the genitals or anus of another person, or the breast of a female person, or such touching through the clothing, for the purpose of arousing or gratifying sexual desire of any person[.]" By finding that Herndon put his penis on the victim's vagina and that the victim was less than 14 years old, the jury found all of the requisite elements to convict Herndon of child molestation in the first degree. We, therefore, reverse the circuit court's judgment convicting Herndon of statutory sodomy in the first degree and remand for the circuit court to enter judgment convicting Herndon of child molestation in the first degree and to sentence accordingly.

■ Herndon also contends that the circuit court erred in denying his motion for new trial and in entering its judgment of conviction because jurors engaged in misconduct and were subjected to outside influences during deliberations. In particular, the evidence established that during deliberations some jurors used their cellu-

lar telephones to make personal or business calls and that one juror spoke to an alternate juror, who, although not participating in the jury's deliberation, expressed her opinion that Herndon was innocent.

■ "[T]he primary if not exclusive purpose of jury privacy and secrecy is to protect the jury's deliberations from improper influence." *U.S. v. Olano,* 507 U.S. 725, 737–38, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). " 'Private communications, possibly prejudicial, between jurors and third persons, or witnesses, or the officer in charge, are absolutely forbidden, and invalidate the verdict, at least unless their harmlessness is made to appear.'" *State v. Quinn,* 405 S.W.2d 895, 896 (Mo.1966) (quoting *Mattox v. U.S.,* 146 U.S. 140, 150, 13 S.Ct. 50, 36 L.Ed. 917 (1892)).

■ The courts presume prejudice when a non-juror has unauthorized communication with jurors. *State v. Babb,* 680 S.W.2d 150, 152 (Mo. banc 1984). When the improper communication intrudes on the jury's deliberations, the state can avoid a new trial only by establishing that the defendant was not prejudiced by the communication. *State v. Hayes,* 637 S.W.2d 33, 38 (Mo.App.1982); *State v. White,* 138 S.W.3d 783, 786 (Mo.App.2004). In the face of *prima facie* evidence of improper communication between jurors and third persons, the state's burden is to show that the communication did not influence the jurors. *Quinn,* 405 S.W.2d at 896; *White,* 138 S.W.3d at 786.

■ The circuit court may grant a new trial for juror misconduct when such misconduct tends to prevent "a fair and due consideration of the case[.]" Section Section 547.020(2), RSMo 2000. The circuit court has broad discretion in determining whether or not the state has met its burden of establishing that the communication was harmless. *State v. Klaus,* 730 S.W.2d 571, 580 (Mo.App.1987). Our standard in reviewing the circuit court's ruling is an abuse of discretion standard. *State v. Carr,* 610 S.W.2d 296, 300 (Mo.App.1980). The circuit court abuses its discretion when its ruling "is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *State v. Rutter,* 93 S.W.3d 714, 729 (Mo. banc 2002), *cert. denied,* 540 U.S. 812, 124 S.Ct. 61, 157 L.Ed.2d 26 (2003).

In seeking to rebut the presumption of prejudice, the state presented the testimony of all 12 jurors and the two alternates at the hearing on Herndon's motion for new trial. Juror Carmen Lopez–Palacio testified that she used her cellular telephone during deliberations to telephone a member of her family to inform him or her that the jury "would be [deliberating] longer." She also said that Bobbi Andujar, an alternate juror, called her during deliberations to ask what the jury was doing.[1] Lopez–Palacio responded that she could not discuss anything with her. According to Lopez–Palacio, Andujar replied that she wished the jury "luck" but opined that Herndon was not guilty and that she did not believe the evidence regarding an incident involving the victim's using a vibrator on Herndon. Lopez–Palacio said that Andujar told her that the victim appeared to be lying about the vibrator because Herndon had testified that he had hemorrhoids and the victim never mentioned anything about using a lubricant when she testified that Herndon had her stick a vibrator in his anus. Lopez–Palacio said that she did not share Andujar's conversation with any-

---

1. Andujar also telephoned Lopez–Palacio after the jury had reached its verdict, and Lo- pez–Palacio told her that the verdict was guilty.

one on the jury, but she acknowledged that, because her cellular phone was loud, anyone sitting next to her could have heard both sides of the conversation. Lopez–Palacio said that her conversation with Andujar did not influence her decision as a juror in any way. She said that she was not aware of any other communications that any other juror had with any other person during deliberations.

Andujar testified that, about an hour after the jury began deliberations, she telephoned and left a message on Lopez–Palacio's cellular telephone because she assumed that the jury would have been finished with its verdict by then. Andujar left a message telling Lopez–Palacio to telephone her when the jury had finished. Andujar said that about 45 minutes later, Lopez–Palacio telephoned her. According to Andujar, Lopez–Palacio said that she was in the bathroom and that she did not know whether or not she was supposed to be using her telephone. Andujar said that Lopez–Palacio telephoned her to let her know "how it was going" and to let her know that the jury was split "50–50." Andujar said that she asked Lopez–Palacio whether or not they were considering the evidence and that Lopez–Palacio said they were going over everything. Andujar said that she told Lopez–Palacio that there was quite a bit of reasonable doubt and that the victim appeared to be lying about certain things, particularly the vibrator incident. Andujar said that she told Lopez–Palacio that she would let her get back to what she was doing but admonished her to "please look at all the evidence" because "this is somebody's life we're talking about." Andujar said that she expressed surprise by the jury's verdict to Lopez–Palacio when Lopez–Palacio called that night after the jury had reached a verdict.

Juror Alversia Pettigrew testified that she used her cellular telephone during deliberations to telephone her son to tell him that she was going to be late. She said that other jurors also used their cellular telephones to call about their children. Pettigrew recalled that Lopez–Palacio received a phone call from an alternate juror and that Lopez–Palacio either told her or she overheard that the alternate was upset because she wanted to deliberate and that the alternate was in favor of a not guilty verdict. Pettigrew said that she did not know whether any of the other jurors were aware of this phone call and that she knew about it only because she sat next to Lopez–Palacio during the call. According to Pettigrew, she did not believe that this communication had any effect on her or any of the other jurors in their deliberations. She also said that the alternate juror's opinion did not influence her deliberations.

The remaining jurors said that they were unaware that any other juror had had communications about the case with anyone outside the jury during deliberations. Although several jurors said that they either used their cellular telephones or saw other jurors using cellular telephones, none of them was aware of any juror using their cellular telephone to discuss the case with anyone outside the deliberation room. All of the other jurors' telephone calls did not pertain to Herndon's case. All of the jurors, including Lopez–Palacio and Pettigrew, testified that their deliberations were not influenced by anyone outside the jury.

Although Herndon was presumptively prejudiced by Andujar's communication with a juror and by the numerous cellular telephone calls made by many of the jurors during jury deliberation, the evidence established that the jury's deliberation was not affected by these calls. The state established that these communications did not influence the jury's verdict.

Herndon asserts, however, that the circuit court erred by deferring to the jurors' testimonies concerning the effect that the misconduct had on their own subjective deliberative process. "The general rule in Missouri is that a juror's testimony about jury misconduct allegedly affecting deliberations may not be used to impeach the jury's verdict." *Travis v. Stone*, 66 S.W.3d 1, 4 (Mo. banc 2002). The testimony from the jurors in this case, however, was not being used to impeach the verdict.[2] Further, once juror misconduct has been alleged, the circuit court may take evidence from jurors to prove that the verdict was not improperly influenced by any alleged jury misconduct. *White*, 138 S.W.3d at 788; *State v. Scrivner*, 676 S.W.2d 12, 14 (Mo.App.1984); *Hayes*, 637 S.W.2d at 38. Indeed, in 1874, the Supreme Court declared:

> The rule is perfectly settled[ ] that jurors speak through their verdict, and they cannot be allowed to violate the secrets of the jury room[ ] and tell of any partiality or misconduct that transpired there[ ] nor speak of the motives which induced or operated to produce the verdict. But they may testify in support of their verdict, that no disturbing influence was brought to bear upon them, and that they were not interfered or tampered with.

*State v. Underwood*, 57 Mo. 40, 52 (1874). Consistent with *Underwood*, the jurors in this case testified in support of their verdict and stated that they were not influenced by a non-juror.

Although case law suggests that "little weight [should] be given to the offending juror's assessment of the effect of [the misconduct,]" *Travis*, 66 S.W.3d at 4, the verdict entered in this case establishes that the third party contact did not influence the jurors. Had Andujar's conversation with Lopez–Palacio influenced the jury, we can safely assume that the jury would have entered a verdict of not guilty. The unanimous guilty verdict refutes any contention that Andujar's conversation with Lopez–Palacio influenced the jurors during deliberations. The circuit court did not abuse its discretion in refusing to grant the new trial motion for jury misconduct.

In his final point, Herndon contends that the circuit court erred by denying his motion for new trial and entering its judgment of conviction because the circuit court wrongfully refused to allow the victim's diary to be sent in its entirety to the jury during deliberations. Herndon asserts that the entire diary was relevant and critical to rebut evidence that (1) Herndon had ripped pages out of the diary, (2) Herndon required the victim to write specific information in the diary, and (3) the victim would not write personal information in the diary because Herndon would constantly read the diaries as a means of exercising control over the victim.

Decisions of what exhibits to give a jury during deliberations are within the circuit court's sound discretion. *State v. Barnett*, 980 S.W.2d 297, 308 (Mo. banc 1998). "An abuse of discretion occurs only when the [circuit] court's decision to exclude an exhibit from the jury room 'was clearly against reason and resulted in an injustice to the defendant.'" *Id.* (quoting *State v. Roberts*, 948 S.W.2d 577, 596–97 (Mo. banc 1997), *cert. denied*, 522 U.S.

---

2. Moreover, "[e]ven where the purpose of testimony regarding the misconduct (whether it occurred inside or outside the jury room) is to impeach the verdict, the party complaining of the testimony must make a timely and proper objection or else the issue is waived." *Travis*, 66 S.W.3d at 4. Herndon did not object to the jurors' testimonies.

1056, 118 S.Ct. 711, 139 L.Ed.2d 652 (1998)).

During deliberations, the jury requested the victim's diary. The circuit court noted that during trial it had said that it would take under advisement whether the entire diary or portions of it should be admitted based on the relevancy of the excerpts. The circuit court determined that some of the excerpts in the diary were "simply not relevant" and that it would not allow the entire diary to be sent to the jury. The court concluded that at trial two statements from the diary—one on January 1, 2002, and the other on January 28, 2002—were relevant. The court said that it would allow the jury to see the January 1 entry and would provide to the jury pages 30 to 37 of the diary, which included the January 28 entry. The circuit court allowed pages 30 to 37 so that the jury would have some context for the victim's writing style and for determining whether she was directed by Herndon to write certain entries. Herndon objected, and the circuit court overruled Herndon's objections and sent only part of the diary to the jury. The jury sent a second request asking for the entire diary, and the circuit court sent a response saying that it was unable to provide the entire diary.

■ Herndon asserts that the diary was critical to establish that no pages had been torn out of the diary. Although the victim had testified in a deposition that Herndon had directed her to write the January 1 entry and then he ripped the pages out of her diary, she testified at trial that no pages had been torn out of the diary. Hence, the jury's viewing of the entire diary was not critical to establish that no pages had been torn out of the diary because everyone agreed that no pages had been removed from the diary.

■ Herndon also contends that the jury's viewing of the entire diary was nec-essary to rebut the evidence that Herndon told the victim what to write in the diary. The victim testified that Herndon required her to write only two entries in the diary— the January 1 entry and the January 28 entry. The circuit court allowed the jury to view these entries. In addition to these entries, the circuit court provided the jury with seven pages from the diary, which included the January 28 entry. The circuit court said that it was providing the jury with these extra pages so that the jury would have an idea about the victim's writing style, syntax, and spelling and so they could make some judgment about whether or not the victim was directed by Herndon to make certain entries. Herndon does not explain why these additional pages were insufficient to allow the jury to make a comparison between the entries that Herndon allegedly forced the victim to write and those that were not forced.

■ Although Herndon asserts that the circuit court should have allowed the jury to view the entire diary because it would have rebutted the evidence that the victim would not write personal information in the diary because Herndon would constantly read the diaries as a means of exercising control over her, he did not raise this argument to the circuit court. An issue raised for the first time on appeal is not preserved for appellate review. *State v. Jones,* 979 S.W.2d 171, 186 (Mo. banc 1998), *cert. denied,* 525 U.S. 1112, 119 S.Ct. 886, 142 L.Ed.2d 785 (1999). Moreover, from the face of the record, we do not discern plain error. *See* Rule 30.20. The circuit court, in an exercise of its discretion, allowed the jury to see those portions of the diary that were shown to be relevant. The circuit court, in its discretion, also allowed the jury to see additional entries to allow the jury to have some context for the relevant entries. The

circuit court, therefore, did not abuse its discretion.

We, therefore, affirm the circuit court's judgment convicting Herndon of five counts of child molestation in the first degree, two counts of sexual misconduct in the first degree, three counts of statutory sodomy in the first degree, two counts of statutory sodomy in the second degree, and one count of statutory rape in the second degree. As to Count VI for statutory sodomy in the first degree, we reverse the circuit court's judgment and remand for the circuit court to enter judgment convicting Herndon of child molestation in the first degree and to sentence accordingly.

VICTOR C. HOWARD, Chief Judge, and ROBERT G. ULRICH, Judge, concur.